**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**CHAUNETTA ANGELIQUE ANDERSON,**

***Plaintiff,***

**v.**

**Civil No.: 1:25-cv-03102-JRR**

**CATHEXIS, LLC,**

***Defendant.***

**MEMORANDUM OPINION**

Pending now before the court is Defendant Cathexis LLC's Motion to Dismiss at ECF No. 14 (the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Defendant's Motion will be denied.

## I. BACKGROUND[1]

Plaintiff brings this action against Defendant, her former employer, alleging retaliation in response to her complaints of race-based pay disparities and disparate promotional opportunities. (ECF No. 12; the "Amended Complaint.") Plaintiff worked with Defendant between March and June 2021 and from August 2021 to April 3, 2024. *Id.* ¶ 6. During her employment, "Plaintiff consistently met performance expectations." *Id.* ¶ 7. On at least four occasions "[b]eginning in October 2022, Plaintiff raised concerns regarding pay disparities and lack of promotional opportunities compared to white coworkers in similar roles" to David Mathews and Stephanie Miskell (both mangers). *Id.* ¶¶ 8–9. Specifically, Plaintiff reported that "she observed white coworkers receiving raises and promotions while she was denied similar opportunities." *Id.* ¶ 10.

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 12.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

She was told that there were no opportunities for growth in her department and advised to pursue other opportunities. (ECF No. 12 ¶ 11.) Plaintiff then interviewed for another role in a different department and was selected for that position. *Id.* ¶ 12. After she transitioned to her new role, a white employee filled Plaintiff's former position and was promoted within three months. *Id.* ¶ 13.

"In March 2024, Plaintiff again raised concerns regarding her compensation." (ECF No. 12 ¶ 15.) In doing so, Plaintiff spoke with Michelle Giancola[2] in Human Resources ("HR") about market research Plaintiff had conducted regarding her pay concerns and Plaintiff shared this research with Ms. Miskell. *Id.* ¶ 16. Plaintiff was informed that the sources of her market research "were not credible," and that Defendant uses CompAnalyst.com. *Id.* ¶ 17. Plaintiff appears to assert she used CompAnalyst.com, but because CompAnalyst.com "does not require HR credentials," Plaintiff "never represented herself as Human Resources and entered her job title and duties directly from her offer letter via her mobile browser." *Id.* ¶ 20. "Shortly after her March 2024 wage inquiry," on April 3, 2024, Ms. Miskell and Joseph Amador[3] accused Plaintiff of "impersonating HR," but did not provide her any evidence or an opportunity to respond before terminating her immediately. *Id.* ¶¶ 21–23. Plaintiff contends that the stated reason for her termination "was false and pretextual," and that, in truth, she was terminated in retaliation for her complaints about race-based pay and promotion disparities. *Id.* ¶¶ 24, 33–38.

Plaintiff filed a Charge of Discrimination with the EEOC on October 1, 2024, in which she complained that Defendant denied her "equal promotional opportunities" and subjected her to "a

[2] While Plaintiff identifies the spelling of this name as "Michelle Giancarlo," *see* ECF No. 12 ¶ 16, Defendant clarified her name is properly spelled "Michelle Giancola." (ECF No. 14-1 at p. 3 n.1.)

[3] Neither the original Complaint nor Plaintiff's Amended Complaint identifies the alleged title or role of Mr. Amador, however, the court notes Plaintiff's October 2024 Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC") identifies him as "Director." Further, the Notice of Right to Sue subsequently issued by the EEOC, and attached to the original Complaint at ECF No. 1-2 and the Motion at ECF No. 14-3, lists Mr. Amador as a carbon copy (cc) recipient of the Notice and addresses it to him at "Cathexis Corp." (ECF No. 14-3 at p. 2.) *See supra*, *re* details of Plaintiff's EEOC Charge of Discrimination, and *see* footnote 4, *infra*, *re* the court's entitlement to consider same.

wage disparity in comparison to Caucasian coworkers." (EEOC Charge, ECF No. 14-2.)[4] She asserted race discrimination and retaliation as the basis of her charge. *Id.* On July 29, 2025, she received her Notice of Right to Sue. (ECF No. 14-3.)

Less than 90 days later, on September 18, 2025, Plaintiff initiated this action against Defendant. (ECF No. 1.) In her initial Complaint, she noted that "this action arises under federal law, including the Equal Pay Act of 1963, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the National Labor Relations Act, 29 U.S.C. § 157." (ECF No. 1 ¶ 3.) Her original Complaint concerns the same series of events and includes, relevant here, that during her employment:

> Plaintiff learned that white counterparts in similar roles appeared to be paid more and receive promotions on a more frequent basis than employees of color. Plaintiff raised concerns with management about pay discrepancy and filed a claim with the EEOC in April of 2023. This claim was dropped as the defendant advised that this was not the case, as Plaintiff's promotion was "in the works." This was not the basis of Plaintiff's termination.

[4] In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is also entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); and then citing FED. R. CIV. P. 10(c)); FED. R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading). In the employment discrimination context, courts regularly conclude that EEOC charges are integral to a plaintiff's complaint, or that they are properly subject to judicial notice. *See, e.g.*, *Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Dep't*, No. CV EA-23-3395, 2024 WL 5264381, at *4 (D. Md. Dec. 31, 2024); *Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D. Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020); *Yampierre v. Baltimore Police Dep't*, No. CV ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022). The court also observes that Plaintiff previously attached her Notice of Right to Sue to her original Complaint (ECF No. 1-2), although it is unclear if she intended to attach it to her Amended Complaint. Regardless, as Plaintiff does not challenge their authenticity, the court considers these documents in ruling on the Motion.

*Id.* ¶ 7. Plaintiff contends that while Defendant terminated her employment "based on the alleged misuse of CompAnalyst," its true reason was pretextual and was instead "retaliation against Plaintiff for exercising protected rights to inquiry about and research wages." *Id.* ¶¶ 12–13. Plaintiff raised three claims of retaliation under the Equal Pay Act, Maryland Equal Pay for Equal Work Act, and the National Labor Relations Act, as well as common law wrongful discharge. *Id.* ¶¶ 17–27.

On December 29, 2025, Plaintiff filed a motion for leave to file an amended complaint.[5] (ECF No. 10.) After Defendant did not respond to, or otherwise oppose, the Motion, the court granted the motion on January 15, 2026, and directed that the Amended Complaint be docketed. (ECF Nos. 11, 12.) Plaintiff's Amended Complaint raises four retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I), 42 U.S.C. § 1981 (Count II), the Maryland Fair Employment Practices Act ("MFEPA") (Count III), and the Maryland Equal Pay for Equal Work Act ("MEPA") (Count IV). Defendant then filed the instant Motion seeking to dismiss all of Plaintiff's claims. (ECF No. 14.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

[5] Defendant had previously moved to dismiss Plaintiff's original Complaint. (ECF No. 5.) After the filing of Plaintiff's Amended Complaint, the court denied that motion as moot. (ECF No. 13.)

*Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III. ANALYSIS[6]

Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds that 1) her Title VII retaliation claim is time barred; and 2) her retaliation claims under Title VII, § 1981, MFEPA, and MEPA fail to plead a plausible inference of causation.[7] (ECF No. 14-1 at pp. 5–15.)

---

[6] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

[7] In reply, Defendant urges that Plaintiff concedes many of the arguments it asserted in its Motion. (ECF No. 17 at p. 2.) While Plaintiff's opposition may have been brief, the court discerns that she attempted to respond to each argument, even to the extent she may have done so in a conclusory manner. The court does not find, then, that she concedes Defendant's arguments.

**A. Title VII Claim—Timeliness Challenge**

Title VII requires that a plaintiff file a charge of discrimination with the EEOC (or the appropriate state or local agency) before filing suit in court. 42 U.S.C. § 2000e–5(e)(1); *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543 (2019). Within 180 days of filing that charge, "a complainant is entitled to a 'right-to-sue' notice." *Davis*, 587 U.S. at 545 (citing 42 U.S.C. § 2000e-5(f)(1)). Upon receipt of that right-to-sue notice, a plaintiff "has 90 days to file suit" in court. *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). While this requirement is not jurisdictional, the 90-day time frame within which a plaintiff may bring suit is akin to a statute of limitations. *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) (first citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); and then quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005)); *see Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (noting that Title VII contains "no language that would tend to rebut the presumption that equitable tolling applies to the 90–day time limit," meaning that the time limits are "not jurisdictional, but are rather in the nature of a statute-of-limitations defense").

At issue here, Plaintiff seemingly received her right-to-sue notice on July 29, 2025.[8] (Notice of Right to Sue, ECF No. 14-3.) Within 90 days, Plaintiff initiated this action. (ECF No. 1.) While Plaintiff's initial Complaint noted that this action "arises under federal laws," including *inter alia* "Title VII," it did not expressly assert a Title VII claim. (ECF No. 1.) Plaintiff subsequently moved for leave to file an amended complaint on December 29, 2025, which was granted after Defendant did not respond. (ECF Nos. 10, 11.) Plaintiff's Amended Complaint expressly raises a Title VII claim of retaliation. (ECF No. 12 ¶¶ 33–35.) Based on the foregoing

[8] For purposes of resolving the Motion, the court need not consider whether Plaintiff received the Notice of Right to Sue on the date it was issued or thereafter.

turn of events, Defendant urges that Plaintiff's Title VII claim is time-barred and does not relate back to the filing of her original Complaint. (ECF No. 14-1 at pp. 5–8.)

This analysis turns on application of Federal Rule of Civil Procedure 15(c). "Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Pursuant to Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when," relevant here, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

As the Fourth Circuit has aptly explained:

> These requirements of Rule 15(c) reflect a subtle and complex compromise of two competing policies: *On the one hand,* the Federal Rules favor simplicity in pleadings, *see* Fed.R.Civ.P. 8(a), and their liberal amendment, *see* Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), as well as the administration of cases to secure their just determination, *see* Fed.R.Civ.P. 1. *On the other hand,* statutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a specified time, and courts must, in recognition of the separation of powers, hesitate to extend or ignore them for judicially created reasons. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 797 (4th Cir.2001). In light of these policies, Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served.

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467–68 (4th Cir. 2007) (emphasis in original). "Thus, the 'fundamental question' in deciding whether a claim relates back under Rule 15(c)(1)(B) 'is whether the original complaint served the notice-giving purpose of the limitations period by providing fair notice—within the applicable limitations period—of the basis for liability that was

added in the amended complaint.'" *Mbanusi v. Liberty Mut. Ins. Co.*, No. CV DLB-23-777, 2025 WL 1311686, at *2 (D. Md. May 6, 2025) (quoting Steven S. Gensler, *Federal Rules of Civil Procedure: Rules & Commentary* Rule 15 (2022)); *see Cross River Bank v. 3 Bea's Assisted Living LLC*, No. TJS-21-3210, 2026 WL 1077457, at *3 (D. Md. Apr. 21, 2026) (same); *Robinson v. Pytlewski*, No. DLB-19-1025, 2022 WL 2359359, at *9 (D. Md. June 30, 2022) (same).

Accordingly, "to relate back there must be a factual nexus between the amendment and the original complaint," *see Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983), *aff'd,* 468 U.S. 42 (1984), meaning "a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (citations omitted). If such a factual nexus exists, "an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan*, 710 F.2d at 163. An amendment then relates back where the amended complaint "amplifies the existing allegations," "makes the existing allegations more definite and precise by presenting additional facts," and even where "the amendment presents a new claim that involves different sources of proof or new legal theories, as long as the core facts are the same." *Mbanusi*, 2025 WL 1311686 at *2 (citation modified) (quoting Gensler, *Rules & Commentary* Rule 15). However, where an amendment "presents 'new claims that arise from an entirely different event or set of facts,'" it does not properly relate back. *Id.* (citation modified) (quoting Gensler, *Rules & Commentary* Rule 15).

Based on the procedural history in this case, the court is satisfied that Plaintiff's Title VII claim relates back to the filing of her original Complaint. Plaintiff's Complaint expressly raises Title VII as a basis for her claim (though she did not include a specific count as to same) and contains allegations that her "white counterparts in similar roles" were paid more and received

promotions on a more frequent basis than employees of color and that she complained about this to management and the EEOC. (ECF No. 1 ¶ 7.) The factual basis of her claim here concerns these same allegations, with some additional contextual allegations. At bottom, Plaintiff still maintains that her termination was "retaliation against [her] for exercising her protected rights to inquire and research wages." *Id.* ¶ 13. Plaintiff's Title VII claim concerns these same allegations and arises from the same "core operative facts" of her original Complaint. *See Mayle*, 545 U.S. at 659, *supra*. At a minimum, the factual allegations underlying Plaintiff's Title VII claim were plainly set forth in the original Complaint and put Defendant on fair notice. That Plaintiff may have subsequently added factual allegations pertaining to these events or even presented a new claim under a new legal theory under these same core facts does not render relation back improper. *See Mbanusi*, 2025 WL 1311686, at *2, *supra*.

Defendant makes much of Plaintiff's statement in her original Complaint that "[t]his was not the basis of Plaintiff's termination." Defendant urges that this statement refers to Plaintiff's "concerns" that she raised with management that employees of color were not paid or promoted on par with their "white counterparts in similar roles." (ECF No. 14-1 at pp. 6–7; ECF No. 1 ¶ 8.) The paragraph from the original Complaint to which Defendant refers reads in full as follows:

> **7. During employment, Plaintiff learned that white counterparts in similar roles appeared to be paid more and receive promotions on a more frequent basis than employees of color. Plaintiff raised concerns with management about pay discrepancy and filed a claim with the EEOC in April of 2023. This claim was dropped as the defendant advised that this was not the case, as Plaintiff's promotion was, "in the works." This was not the basis of Plaintiff's termination.**

(ECF No. 1 ¶ 8.) The court is not persuaded that the final sentence of the paragraph bars relation back. First, liberally construed, the sentence does not, as Defendant asserts, clearly show that Plaintiff alleged she was not terminated in retaliation for her complaints about race-based pay and

promotion disparities, as the meaning of "[t]his" is somewhat ambiguous. When read in full context, "This" could refer to Plaintiff's filing of an EEOC Charge or Defendant's stated pretextual reason for her termination. The court need not speculate or attempt to divine the meaning of "This," however, because the point remains that the same core operative facts alleged in the Amended Complaint are presented in the original Complaint. Plaintiff alleges that she "raised concerns with management" about race-based pay and promotion disparities, and that her subsequent termination was retaliation "for exercising protected rights to inquire about and research wages." (ECF No. 1 ¶¶ 7, 13.) Liberally construed and accepted as true, Plaintiff's claims of retaliation based on complaints of race-based pay and promotion disparities plainly concern the same factual nexus of her original Complaint.

Accordingly, the court is satisfied that Plaintiff's Title VII claim is liberally construed to relate back to her original Complaint. Her Title VII claim was thus timely filed in this court.

**B. Title VII, § 1981, and MFEPA Claims—Pleading Challenges**

Defendant also challenges Plaintiff's retaliation claims under Title VII, § 1981, and MFEPA for failure to allege a plausible inference that her termination was because of her protected activity. (ECF No. 14-1 at pp. 8–13.)

By way of background, Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Such retaliation claims are also actionable under 42 U.S.C. § 1981 and MFEPA. Specifically, § 1981(a), similarly encompasses claims of retaliation for complaining of race discrimination in employment. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that "42 U.S.C. § 1981 encompasses claims of retaliation"); *Rozdilsky v.*

*Liquidity Servs., Inc.*, No. CV 22-3355-TDC, 2026 WL 482940, at *8 (D. Md. Feb. 20, 2026) ("Claims for retaliation for complaining about employment discrimination are also cognizable under § 1981."). MFEPA also prohibits an employer from "retaliat[ing] against any of its employees . . . because the individual has" opposed a prohibited practice or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle." MD. CODE ANN., STATE GOV'T § 20-606(f).

Generally, "[c]ourts apply Title VII precedent, including the burden-shifting framework, to discrimination, retaliation, and harassment claims brought under the MFEPA and Section 1981." *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 211 (D. Md. 2025); *see also id.* at 211 ("The elements of a prima facie claim of retaliation under Section 1981 and the MFEPA are identical to those under Title VII."); *Doe v. Cath. Relief Servs.*, 484 Md. 640, 680–81 (2023) ("[C]ourts interpret the MFEPA consistent with its federal corollary, absent 'legislative intent to the contrary."). Accordingly, where Defendant's argument is the same as to each, and no party asserts any distinction in the relevant analysis as to each claim, the court considers these claims together.

A plaintiff "may prove that an employer took action with . . . retaliatory intent through direct evidence or through the burden-shifting framework of *McDonnell Douglas*."[9] *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). The elements of a prima face case of retaliation under this burden-shifting framework, applicable here, include: "(1) [the plaintiff] engaged in protected activity, (2) the employer took adverse action against her, and (3) a causal relationship existed between the protected activity and the adverse employment action." *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 819 (4th Cir. 2026) (citing *Foster v. Univ. of*

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). A retaliation claim "may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish the *McDonnell Douglas* framework's prima facie case." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). "At bottom, in order to adequately plead a Title VII retaliation claim, the complaint must 'allege facts supporting a plausible inference that the employer took an adverse . . . action against the plaintiff 'because' of the plaintiff's protected activity.'" *Id.* (citation modified) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)).

For purposes of the instant Motion, Defendant's challenge is solely as to Plaintiff's pleading of the third element—that she has plausibly alleged a causal relationship between her protected activity and adverse action. The court focuses its analysis accordingly. Plaintiff may establish the necessary causal relationship through one of two paths: 1) "temporal proximity between the protected activity and adverse action," or 2) "other relevant evidence [that] indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector & Visitors of the Univ. of Virginia*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)); *see Andrews v. Dejoy*, No. 24-2218, 2026 WL 74575, at *3 (4th Cir. Jan. 9, 2026) (discussing same). The Fourth Circuit has not adopted a "bright-line rule for temporal proximity," but has acknowledged that a three-month period between a protected activity and adverse action, absent additional allegations, is insufficient to support a finding of a causal link. *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022); *see Seabrook v. Driscoll*, 148 F.4th 264, 273 (4th Cir. 2025) (discussing same).

This court, and others, have repeatedly recognized that "[o]ne month is a sufficiently short time to establish a causal link by temporal proximity alone." *Lowman v. Maryland Aviation*

*Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019); *see also, e.g.*, *McGinnis v. Plamondon Enters., Inc.*, No. 25-2138-BAH, 2026 WL 221694, at *13 (D. Md. Jan. 28, 2026); *Colebrooke v. T-Mobile USA, Inc.*, No. 2:20-00397-RMG-MGB, 2021 WL 2813712, at *13 (D.S.C. May 26, 2021), *report and recommendation adopted,* No. 2:20-CV-00397-RMG, 2021 WL 2389778 (D.S.C. June 11, 2021); *Westmoreland v. Prince George's Cnty., Md.*, No. 09-CV-2453 AW, 2010 WL 3369169, at *11 (D. Md. Aug. 23, 2010). *Cf. Foster*, 787 F.3d at 253 (finding a month gap between plaintiff's protected activity and her termination, together with other evidence, was "sufficient to create a jury question regarding the causation prong of the prima facie case").

Plaintiff here alleges a causal relationship through the temporal proximity between her protected activity and her adverse action. Liberally construed and drawing all reasonable inferences in her favor, Plaintiff alleges that she raised concerns about race-based pay and promotion disparities on at least four occasions to Mr. Mathews and Ms. Miskell. (ECF No. 12 ¶¶ 8–9.) These complaints began in October 2022 and continued until at least March 2024, when Plaintiff last "raised concerns regarding her compensation" to Ms. Giancola and shared market research with Ms. Miskell. *Id.* ¶¶ 13–14. Defendant contends that because Plaintiff does not expressly state that her March 2024 complaint discussed racial disparities, she cannot support such an inference. The court disagrees; such a reading is too restrictive in view of the liberal construction afforded Plaintiff's filings as a self-represented litigant and the requirement that all reasonable inferences be drawn in her favor. With these principles in mind, the court reads Plaintiff's allegations to include that she "again" raised her same concerns regarding compensation, *i.e.*, concerns about race-based pay and promotion disparities, in her March 2024 complaint to HR, a month before she was terminated. (ECF No. 12 ¶¶ 8–9, 13–14.) Plaintiff thus

alleges a mere month between her alleged protected activity and subsequent termination. As discussed above, this court has repeatedly found such temporal proximity sufficient to state a claim. *See, e.g.*, *Lowman*, 2019 WL 133267, at *8; *McGinnis*, 2026 WL 221694, at *13; *Westmoreland*, 2010 WL 3369169, at *11.

Accordingly, Plaintiff plausibly alleges facts giving rise to an inference that Defendant took adverse action against her because she engaged in protected activity. The court will deny the Motion on that basis.

**C. MEPA Claim—Pleading Challenge**

Defendant's final argument is that Plaintiff's MEPA claim, like her Title VII, § 1981, and MFEPA claims, fails to allege a plausible inference of causation. (ECF No. 14-1 at pp. 13–15.)

Under MEPA, an employer may not, *inter alia*, "take any adverse employment action against an employee for . . . inquiring about the employee's wages or another employee's wages," or "asking the employer to provide a reason for the employee's wages." MD. CODE ANN., LAB. & EMPL. § 3-304.1(a)(3). "The few Courts that have analyzed claims under this provision of the MEPA do so by looking to the MEPA's federal analogue, the Equal Pay Act ('EPA')." *Robinson v. Delmarva Auto Glass, Inc.*, No. CV GLR-25-265, 2026 WL 1413068, at *5 (D. Md. May 20, 2026) (citing cases); *see also, e.g.*, *Long v. Get U Trucking, LLC*, No. GLS 23-2392, 2025 WL 1370666, at *11–12 (D. Md. May 12, 2025) (noting that "in analyzing whether Plaintiff has sufficiently pleaded a retaliation claim, the Court will look to the MEPA's federal analog[ue]"); *Raines v. Am. Fed'n of Tchrs. - Maryland Pro. Emps. Council, AFL-CIO Loc. 6197*, No. CV ADC-19-1266, 2019 WL 4467132, at *10 (D. Md. Sept. 18, 2019) (noting "the Court looks to cases filed pursuant to its federal analogy, the EPA, as guidance regarding Plaintiff's claim of retaliation under the MEPA"). "Under the EPA, retaliation claims are subject to the same analysis as claims of

retaliation brought under Title VII and Section 1981." *Long*, 2025 WL 1370666, at *12 (citing *Raines*, 2019 WL 4467132, at *10); *see Robinson*, 2026 WL 1413068, at *5 (same); *Burnett v. AstraZeneca Pharms. LP*, No. 22-CV-03335-LWW, 2024 WL 5055197, at *10 (D. Md. Dec. 9, 2024), *aff'd,* No. 25-1029, 2026 WL 788938 (4th Cir. Mar. 20, 2026) (same); *Robertson v. Virginia State Univ.*, No. 3:23CV777 (DJN), 2024 WL 1774821, at *15 (E.D. Va. Apr. 24, 2024) (same); *E.E.O.C. v. Nucletron Corp.*, 563 F. Supp. 2d 592, 597 (D. Md. 2008) (same).

As discussed above, as Plaintiff proceeds pursuant to the burden-shifting framework, the elements of a prima facie case of retaliation include "(1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) a causal relationship existed between the protected activity and the adverse employment action." *Johnson*, 163 F.4th at 819; *see also Lee v. Belvac Prod. Mach., Inc.*, No. 20-1805, 2022 WL 4996507, at *2 (4th Cir. Oct. 4, 2022) (same regarding Title VII and the EPA). Again, as Defendant challenges solely the sufficiency of Plaintiff's MEPA claim as to the causation element, the court focuses its analysis on that alone. The requisite causal connection can be shown through "(a) facts that suggest the adverse action occurred because of the protected activity; or (b) temporal proximity." *Long*, 2025 WL 1370666, at *12 (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021)). To adequately plead such a claim, Plaintiff must merely allege facts to support a plausible inference that the adverse action occurred because of her protected activity. *See Barbour*, 105 F.4th at 590, *supra*.

Here, Plaintiff alleges she "raised concerns regarding her compensation," supported by external research, in March 2024, with Ms. Giancola and Ms. Miskell. (ECF No. 12 ¶¶ 15–17.) Shortly thereafter, she was accused of "impersonating HR" and terminated on April 3, 2024. *Id.* ¶¶ 21–23. As explained above, as Plaintiff alleges a mere month between her protected activity and termination, she plausibly alleges facts to support the causal relationship. *See Lowman*, 2019

WL 133267, at *8; *McGinnis*, 2026 WL 221694, at *13; *Westmoreland*, 2010 WL 3369169, at *11.

Defendant urges that Plaintiff's description of Defendant's proffered reason for its termination decision as "false and pretextual" fails as conclusory. But this neglects Plaintiff's substantive allegations the court addressed above. As with her retaliation claims discussed earlier, Plaintiff's allegations in support of her MEPA claim are sufficient to support a plausible and reasonable inference of the requisite causation and thus withstand Rule 12(b)(6) scrutiny. *See also, e.g.*, *Shaw v. North Carolina*, No. 5:23-C-624-FL, 2024 WL 1259452, at *6 (E.D.N.C. Mar. 25, 2024) (finding plaintiff adequately pled retaliation under EPA where she alleged protected activity between January and February 2022, retaliatory hostile work environment February through April 2022, and demotion in April 2022).

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be denied.

August 10, 2026

/S/

Julie R. Rubin
United States District Judge